KENNETH H. YOON (State Bar No. 198443)
STEPHANIE E. YASUDA (State Bar No. 265480)
**YOON LAW, APC**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone: (213) 612-0988
Facsimile: (213) 947-1211

G. SAMUEL CLEAVER (SBN 245717)
sam@gscleaverlaw.com
**LAW OFFICES OF G. SAMUEL CLEAVER**
5670 Wilshire Boulevard, 18th Floor
Los Angeles, California 90036
Telephone: (323) 648-6676

Attorneys for Plaintiff Maria Herrera

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HERRERA, as an individual and on behalf of all others similarly situated, and as an aggrieved employee on behalf of herself and other aggrieved employees,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL EXPRESS CORPORATION, a corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.: 5:17-cv-02137-MWF-SHK<br><br>[Hon. Michael W. Fitzgerald, Courtroom 5A]<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　July 8, 2019<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 5A<br><br>Date Filed: September 12, 2017 |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 8, 2019, at 10:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 5A of the above-entitled Court, located at the United States Courthouse, 350 W 1st Street, 8th Floor, Los Angeles, California 90012, Plaintiff Maria Herrera ("Plaintiff") will, and herby does, move this Court for an order (1) preliminarily approving the proposed class action settlement; (2) certifying the settlement Class; (3) appointing Yoon Law, APC and Law Offices of G. Samuel Cleaver as Class Counsel for the settlement Class; (4) authorizing the mailing of the proposed class action notice; and (5) scheduling a Final Approval and Fairness Hearing.

This motion is made on the grounds that the proposed settlement is a fair and reasonable compromise of the disputed claims in this action, and it satisfies all criteria for preliminary approval of a class action settlement.  The motion is based upon this notice, the attached memorandum of points and authorities, the declarations filed concurrently herewith, and all papers and records on file herein. This motion is made following the conference of counsel pursuant to L.R. 7-3.

DATED:  May 20, 2019 **YOON LAW, APC**


By:   */s/ Stephanie E. Yasuda*
Stephanie E. Yasuda
Attorneys for Plaintiff Maria Herrera

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................. 1

II.  SUMMARY OF THE LITIGATION............................................... 1

  A.  Pleadings .................................................................................. 1

  B.  Discovery and Investigation ................................................ 3

  C.  Settlement ............................................................................... 3

III.  SUMMARY OF SETTLEMENT..................................................... 3

IV.  PRELIMINARY APPROVAL OF THIS SETTLEMENT
  IS APPROPRIATE .......................................................................... 5

  A.  Legal Standard....................................................................... 5

  B.  The Settlement Meets the Standards for Preliminary Approval ......... 6

    1.  Arms'-Length Negotiations ....................................... 6

    2.  Sufficient Investigation and Discovery..................... 7

    3.  Class Counsel's Wage and Hour Class Action Experience...... 7

  C.  The Settlement is Fair, Adequate, and Reasonable............................ 7

    1.  The Settlement is Fair and Reasonable Given
      Maximum Potential Recovery and Accompanying
      Risks of Continued Litigation.................................... 8

    2.  Costs and Risks of Continued Litigation .................. 9

    3.  Non-Admission of Liability by Defendant ............... 10

    4.  The Settlement is Within the Range of Reasonableness ........ 10

V.  THE PROPOSED CLASS NOTICE MEETS THE REQUIREMENTS
  OF RULE 23 AND DUE PROCESS ......................................... 11

VII.  THE REQUESTED ENHANCEMENT IS REASONABLE ................... 13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS (cont'd)</u>

VIII.  CLASS CERTIFICATION……………………………………………..…15

    A.    The Class is Sufficiently Numerous.................................................. 16

    B.    The Class is Ascertainable ............................................................... 17

    C.    There Exists a Community of Interests Amongst Class Members ... 17

        1.    Common Questions of Law and Fact Predominate ............... 17

        2.    The Claims of the Named Plaintiff are Typical of the Claims of the Class  ............................................................... 19

        3.    Class Counsel and the Class Representative are Adequate .... 20

    D.    The Class Action Method is the Superior Means of Adjudication ... 21

IX.    CONCLUSION............................................................................................ 22

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

3

Page

**Federal Cases**

4

*Bogosian v. Gulf Oil Corp.*,
  621 F. Supp. 27 (E.D. PA 1985) ................................................ 13, 14

5

6

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................ 8

7

8

*Ching v. Siemens Industry, Inc.*,
  2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ................................ 5

9

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................... 6

10

11

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ...................................................... 14

12

*Dunn & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ................................................ 13

13

14

*Eddings v. Health Net, Inc.*,
  2013 WL 169895 (C.D. Cal. Jan. 16, 2013) ................................ 12

15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................... 12

16

17

*Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) ................................................ 13

18

19

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ...................................................................... 6

20

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...................................................... 8, 9

21

22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................... 6

23

*In re General Motors Corp.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................... 8

24

25

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................... 5

26

*In re Tableware Antitrust Litig.*,
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................ 6

27

*Ma v. Covidien Holding, Inc.*,
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ................................ 5

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF AUTHORITIES (cont'd)

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ................................................................ 5

*National Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... 10

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ............................................................ 6, 9

*Roberts v. Texaco,*
   979 F. Supp. 185, 201 (S.D.N.Y. 1997) ............................................. 14

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ............................................................... 6

*Ross v. Trex Co., Inc.,*
   2009 WL 2365865 (N.D.Cal. July 30, 2009) ....................................... 6

*Stanton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ............................................................... 5

*Van Vranken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................... 14

*Wright v. Linkus Enter., Inc.,*
   259 F.R.D. 468 (E.D. Cal. 2009) ....................................................... 11

*Young v. Katz,*
   447 F.2d 431 (5th Cir. 1971) ............................................................. 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Parties have reached a proposed settlement that, if approved by the Court, will fully resolve this action. Plaintiff Maria Herrera ("Plaintiff"), on behalf of herself and the putative class, moves this Court for an order: (1) preliminarily approving the proposed Joint Stipulation of Settlement and Release ("Settlement Agreement" or "Settlement"); (2) approving the proposed notice plan and directing distribution of the proposed class notice (attached as **Exhibit 1** to the proposed Settlement Agreement); and (3) setting a schedule for final approval.

The settlement Class consists of all Defendant Federal Express Corporation's ("Defendant or FedEx") current and former non-exempt delivery drivers who worked in California at any time from September 12, 2013 to the present, totaling about 11,500 persons. The Class Period is September 12, 2013 to the Preliminary Approval Date. (Settlement ¶¶ 2.3, 2.6.)

The proposed settlement is for the gross sum of $5,000,000.00 (plus Defendant's share of payroll tax), which represents the total amount payable in this settlement by Defendant, and includes without limitation the Settlement Administration Costs, attorneys' fees, litigation costs, the PAGA Payment, and the Class Representative Enhancement Payment. The Gross Settlement Amount is exclusive of the employer's share of payroll taxes. (Settlement ¶ 2.18.)

As discussed in further detail below, the terms of the proposed settlement are fair and are the product of serious, arm's-length negotiation. Plaintiff respectfully requests that the Court preliminarily approve the Settlement Agreement and the class action and representative action settlement it embodies, direct notice to the class, and schedule a final approval hearing.

## II.    SUMMARY OF THE LITIGATION

### A.    **Pleadings**

Plaintiff was formerly employed by FedEx as a courier delivery driver. She

commenced the instant putative class action in the California Superior Court for the County of San Bernardino on September 12, 2017. Plaintiff's original complaint asserted the following violations of California's Labor Code and Business & Professions Code on behalf of a class of other non-exempt delivery drivers: (1) failure to pay all meal period wages and rest break wages, (2) failure to pay all minimum and overtime wages, (3) failure to reimburse all necessary work-related expenses, (4) failure to pay all wages due and owing upon termination of employment, (5) failure to provide accurate wage statements, and (6) engaging in unfair business practices pursuant to Business and Professions Code §17200 *et seq.* (Unfair Competition Law ("UCL")).  (DE 1-1, pp. 5-17.) Defendant removed the action to the District Court for the Central District of California on October 19, 2017. (DE 1.)

On December 7, 2017, Plaintiff filed a companion representative action in the California Superior Court for the County of San Bernardino pursuant to the Private Attorneys General Act of 2004 (California Labor Code section 2698 *et seq.* ("PAGA")). The Parties stayed the action by stipulation pending resolution of the instant action.  For purposes of the settlement and the approval process, Plaintiff intends to file an amended complaint – subject to Court approval – adding her PAGA claim to the instant action.

On November 19, 2018, Plaintiff filed her motion for class certification seeking to certify the class of non-exempt delivery drivers. The class definition broadly covered two categories of drivers: couriers (the vast majority of the class) and ramp transport drivers ("RTD").

The Parties completed briefing on the motion for class certification on February 4, 2019; the motion was scheduled to be heard on February 25, 2019. However, the Parties participated in mediation before Lynn Frank, Esq., of Frank & Feder on February 14, 2019, and thereafter settled the action by mediator's proposal.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**B.** <u>**Discovery and Investigation**</u>

The Parties engaged in extensive discovery leading up to and throughout the briefing on Plaintiff's motion for class certification, including written requests for production and interrogatories, the depositions of Plaintiff and Defendants' corporate designees per Federal Rule of Civil Procedure 30(b)(6), the depositions of class member declarants, and the deposition of Plaintiff's expert. The discovery conducted to date yielded hundreds of pages of policy documents and thousands of lines of timekeeping and payroll data that Plaintiff analyzed through her retained expert, amongst other categories of data.   (Yoon Decl. ¶ 9.) The discovery process necessitated several informal discovery conferences as well as formal motion practice to compel further discovery responses. (Yoon Decl. ¶ 10.)

**C.** <u>**Settlement**</u>

The Parties participated in an all-day mediation session with Ms. Frank on February 14, 2019, which ended with a mediator's proposal. Upon the Parties request, the Court continued the hearing on Plaintiff's motion for class certification, and the Parties thereafter accepted the mediator's proposal on February 27, 2019. The Parties have since executed a formal Settlement Agreement. (Yoon Declaration ¶ 13, Exhibit A.)

## III.   SUMMARY OF SETTLEMENT

The Settlement Agreement, attached to the Declaration of Kenneth H. Yoon as **Exhibit A**, provides for $5,000,000.00 as the Gross Settlement Amount. (Settlement ¶ 2.18.) This settlement will be automatically disbursed without the need for claim forms, and with no reversion to the Defendant.   (Settlement ¶ 6.11.4.) Unclaimed payments will be transmitted to the California State Controller, which will hold the funds for that class member under California's Unclaimed Property Law. (Settlement ¶ 6.12.3.)

The Net Settlement Amount is the balance of the Gross Settlement Amount after the following are deducted:

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

- Attorneys' fees in an amount up to $1,666,666.67 (33 1/3% of the Gross Settlement Amount) (Settlement ¶ 6.6);
- Actual litigation costs advanced by Class Counsel not to exceed $75,000 (*Id*);
- Settlement Administration Costs estimated to be in the amount of $45,750.00 (Yoon Decl. ¶ 19);
- Up to $20,000 for the Enhancement Payment to Plaintiff (Settlement ¶ 2.14); and
- The PAGA Payment in the amount of $50,000.00, of which $12,500.00 will be distributed to the Class (Settlement ¶ 2.24).

The Class Period is defined as September 12, 2013 to the Preliminary Approval Date. (Settlement ¶ 2.6.) The Class is estimated to have approximately 11,113 members.  (Settlement ¶ 2.5.)

The Net Settlement Amount will be paid out to all Settlement Class members who do not timely submit a valid and timely opt-out request.  The Class Notice explains to the Class Members all the procedures for settlement, including opt-out and objection procedures.  (Class Notice, attached as Exhibit 1 to the Settlement.)

Each Class Member's Claim Amount shall be determined based on the number of workweeks that the Class Member was a member of the Class during the Class Period divided by the total number of workweeks that every Class Member was a member of the Class during the Class Period multiplied by the Net Settlement Amount. When applying this formula, Class Members whose employment with Defendant terminated during the Class Period shall be credited an additional four workweeks to compensate them for their waiting time claims. Workweeks shall be all weeks within which a Class Member was considered actively employed by Defendant as a Class Member for any length of time. There are no partial or fractional workweeks. Thus, any weeks during which a Class

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Member was employed by Defendant but not actively employed (for example, while classified as exempt, while on a leave of absence, etc.) are not included as workweeks. The calculation of a Class Member's workweeks and a determination as to whether a Class Member was actively employed in a particular pay period shall be construed from Defendant's records. (Settlement ¶ 6.11.1.)  Thus, the allocation awards a greater share to those people who worked a greater part of the Class Period.

## IV.   PRELIMINARY APPROVAL IS WARRANTED

### A.   <u>Legal Standard</u>

A proposed settlement under Federal Rule of Civil Procedure 23(e) must be "fundamentally fair, adequate, and reasonable." *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The purpose of Rule 23(e) is "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Ma v. Covidien Holding, Inc.*, 2014 WL 360196 at *3 (C.D. Cal. Jan. 31, 2014) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)).

To determine the preliminary fairness of an agreement, the Court balances "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; [and] the presence of a governmental participant." *Stanton*, 327 F.3d at 959, quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); see also *Ching v. Siemens Industry, Inc.*, 2013 WL 6200190 at *6-7 (N.D. Cal. Nov. 27, 2013) (applying these factors to a preliminary approval of class settlement).  Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)). The question for preliminary approval of a settlement is whether it is "within the range of reasonableness." *Ross v. Trex Co., Inc.*, 2009 WL 2365865 at *3 (N.D.Cal. July 30, 2009).

The initial determination to approve or reject a proposed settlement is "committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625).  In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.").  In general, there is a strong judicial policy favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

**B.    The Settlement Meets the Standards for Preliminary Approval**

**1.    Arms'-Length Negotiations**

The Settlement before the Court was reached through arms'-length bargaining. Each side was represented by reputable attorneys, experienced in

wage-and-hour law and class action litigation. Each side prepared their case based on the extensive discovery exchanged between the parties and their own independent investigations.  (*See* Yoon Decl. ¶ 13.)

### 2.     Sufficient Investigation and Discovery

As detailed above and in the Yoon Declaration (¶¶ 8-13), the Parties agreed to settle this action only after extensive discovery and investigation, including production and review of salient documents, depositions, and written discovery. In sum, the Parties had conducted significant investigation in order to fully brief the propriety of class certification.

### 3.     Class Counsel's Wage-and-Hour Class Action Experience

Here, counsel for both Plaintiff and Defendant have a great deal of experience in wage-and-hour class action litigation. Plaintiff's counsel have significant and reputable histories of litigating complex cases, including wage-and-hour class actions and representative actions, such as the present case, as discussed further in section VII (C)(3).

This was a contentious and litigation-intensive case where Plaintiff retained an expert and had fully prepared her contested motion and reply for class certification before the Parties reached this tentative resolution. As noted above, Plaintiff's counsel conducted extensive investigation of the factual allegations in this case for purposes of class certification. Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current settlement is fair, reasonable, and adequate. In sum, there should be a presumption of fairness because the factors establishing such a presumption are satisfied.

### C.     <u>The Settlement is Fair, Adequate, and Reasonable</u>

The Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of trial and appeals, the risks in an area where the law is constantly changing, and the costs of pursuing such litigation.  The Settlement here is within a range of reasonableness allowing

for preliminary approval. Applying the rest of the factors here, the Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

## 1. The Settlement is Fair and Reasonable Given Maximum Potential Recovery and Accompanying Risks of Continued Litigation

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *see also Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

Plaintiff's claim for rest break premiums is premised upon the allegations that Defendant (1) failed to affirmatively relieve employees of duty during rest breaks and instead required employees to take rest breaks "when they determine they can," and (2) required employees to remain on-call during rest breaks by monitoring their electronic scanning and communication devices ("PowerPad"). Plaintiff also advances a meal period and rest break claim on the theory that Defendant fails to provide employees a reasonable opportunity to take rest breaks or encourages employees to forgo rest breaks by the use of unrealistic performance metrics. Plaintiff estimated damages for these claims at one premium per workweek worked by courier Class Members (based upon Defendant's records and documents produced by Defendant, Plaintiff estimated 1,347,000 workweeks and an average rate of pay of $23.26 hours) for a total amount of approximately $31.3 million.

Plaintiff's overtime wage claims are premised upon Plaintiff's allegation

that Defendant's electronic timekeeping system permits managers to insert a recorded meal period at any time during an employee's shift, without regard to whether or not the employee was actually working during that time according to Defendant's own records of package scan activity (called "Gap Reports"). Thus, Defendants failed to compensate its employees for all hours worked. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587 (2000). Based upon Plaintiff's expert analysis, Defendant's records indicate that 21.4% (15 employees out of a sample of 70) of courier Class Members worked through recorded meal periods. However, the number of times this occurred for each employee within the 21.4% was low. Thus, Plaintiff estimates damages in an amount less than $500,000.00 (2,056 persons x 20 violations x $23.26 hourly rate x 0.5 hours = $478,351.20).

Plaintiff's claim for reimbursements is premised upon the allegation that Defendant does not reimburse employees for the use of personal mobile telephones for work-related calls. Plaintiff estimated damages for reimbursements in the amount of $3.00 per workweek worked by all Class Members (Plaintiff estimated 1,567,000 workweeks for the Class) for a total amount of $4.7 million.

Thus, Plaintiff estimates damages for the actual loss in the amount of approximately $36.5 million given the high number of workweeks and the large class size at issue in this case. However, Plaintiff believes a discount of this figure is warranted in light of the fact that her claims are largely dependent upon the theory that Defendant encouraged employees to forgo breaks – a standard articulated in *Brinker Restaurant Corporation v. Superior Court*, 53 Cal. 4th 1004 (2012) for which there is a dearth of case law and which Plaintiff understands the Trier of Fact could easily determine for or against her.

### 2. Costs and Risks of Continued Litigation

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157.  In applying this factor, the Court must weigh

the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement provides fair and prompt relief to all Class Members in lieu of lengthy continued litigation.  After resolution of Plaintiff's class certification motion, assuming the class survived, the Parties would proceed with a class action trial, estimated to take several days. At trial, there exists the regular risk that the Trier of Fact will find against Plaintiff, or will not find that a lower amount of damages is warranted.

Further, after a decision favoring the Class, Defendant would have the right to appeal. Given the realities of appellate practice, this process places ultimate relief several years away.  The immediate and substantial recovery now, versus a years-long appeal process regarding various potential issues, is a significant factor to be considered.  *See National Rural Telecomms. Coop. v. DIRECTV, Inc.*, Nos. CV 99–5666 LGB(CWX), CV 00–2117 LGB(CWX), 221 F.R.D. 523, 526-27 (C.D. Cal. 2004) (Baird, J.) ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

### 3.    Non-Admission of Liability by Defendants

Plaintiff understands that Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit, and further denies that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. Defendant maintains, among other things, that they have complied at all times with California wage and hour laws. This denial increases the likelihood of protracted litigation.

### 4.    The Settlement is Within the Range of Reasonableness

The reasonable high-end exposure estimated by Plaintiff is $36.5 million. The Gross Settlement Amount therefore represents approximately 13.7% of the

maximum potential loss. Plaintiff respectfully submits this is well within the range of reasonableness. *See, e.g.*, William B. Rubenstein et al., *Newberg on Class Actions* § 13:15 (5th ed. 2016) (the range of reasonableness percentage could be as low as $1/100^{th}$ or $1/1000^{th}$ of 1%); *Ma*, 2014 WL 360196 at *5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC*, 2014 WL 3610945, at **5** (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *9 (N.D. Cal. Jan. 26, 2007) aff'd, 331 Fed. Appx. 452 (9th Cir. 2009) (approving a settlement of an action claiming unpaid overtime wages where the settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 325 (3rd Cir. 2011) (there appears to be "no authority that requires a district court to assess the fairness of a settlement in light of the potential for trebled damages."). Further, in light of Defendant's denial of liability, the Court should discount the total value of the claims to account for the risks and costs of continued litigation.  Accordingly, the total exposure based on Defendant's anticipated defenses may be anywhere from zero to $31.3 million. (Yoon Decl. ¶ 14.)

## V.    THE PROPOSED CLASS NOTICE MEETS THE REQUIREMENTS OF DUE PROCESS

The proposed notice (Exhibit 1 to the Settlement Agreement) complies with due process and Rule 23. Under Rule 23(e), the court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."  Fed.R.Civ.P. 23(e)(1). Class members are entitled to receive "the best notice practicable under the circumstances."  *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009), quoting Fed.R.Civ.P. 23(c)(2).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

heard." *Churchill Vill., L.L.C. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). In addition, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *see also Eddings v. Health Net, Inc.*, 2013 WL 169895 at *6 (C.D. Cal. Jan. 16, 2013) (finding that the parties' plan for notice by first-class mail met the "best practicable notice" standard where the settlement administrator would take steps such as database searches to ensure that class members' addresses were current and would re-mail returned notices).

The Settlement provides that the Settlement Administrator will send by first class mail a copy of the court-approved notice to all Class Members. (Settlement ¶ 6.3.) Class Members will have forty-five (45) days from the date of the initial mailing to object or request exclusion. (Settlement ¶ 2.12.) There is no requirement to file a claim to be paid; the administration of the settlement payments to Class Members is an automatic process. (Settlement at ¶ 6.11.4.) The Class Notice provides Class Members with information as to how they may be paid for their respective proportionate shares of the Net Settlement Amount. (Settlement Ex. 1.) In the event a Notice Packet is returned undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address by using the social security number of the class member and standard skip tracing devices to conduct a search for a correct mailing address. (Settlement ¶ 6.3.2.)

The Class Notice provides the Class everything they need to know in order to make an informed decision. It provides an explanation of the proposed Settlement and procedures on how to object and appear. The documentation provides a brief explanation of the case, the exclusion date and procedure for exclusion, the attorney's fees to be paid and the individual members' estimated recovery under the Settlement net of expenses, which are all included in the notice

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

papers. It also states that those who do not opt out will be bound by the Settlement. (Settlement Ex. 1.) Additionally, the settlement release is broader than the certified claims, and the notice will give Class Members the opportunity to evaluate the settlement release and choose to either participate in or opt-out of the action.

The estimated sum for Settlement Administration Costs is $45,750.00. (Yoon Decl. ¶ 19.)

## VI. THE REQUESTED ENHANCEMENT IS REASONABLE

Pursuant to the terms of the Settlement, Defendant agreed not to oppose an enhancement payment to the Class Representative of $20,000.00, which Plaintiff requests this Court preliminarily approve.

It is appropriate to provide a payment to class representatives for their services to the class. *Van Vraken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("Proceeding by means of a class action avoids subjecting each employee to the risks associated with challenging an employer"); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D. Pa. 1985). Incentive awards for representative plaintiffs are both proper and routine.  For example, in *Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991), each representative plaintiff was granted a $50,000.00 incentive award.  Also, the class representatives in In re *Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990), received incentive awards ranging from $35,000.00 to $55,000.00.  Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate to induce individuals to step forward and assume the burdens and obligations of representing the class.  In deciding the amount of an enhancement award for a class representative, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions and the

amount of time and effort the plaintiff expended in pursuing the litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. PA 1985).

Particularly in employment class actions, such as discrimination or wage claims, named plaintiffs should be entitled to an enhancement award as an incentive to take the risks associated with pursuing employment claims on behalf of other employees.  An award is justified where the plaintiff is a "present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y 1997).

The amount sought by Plaintiff is warranted in this case. Plaintiff was actively involved in this case during the entire litigation. She spent time searching for documents, contacting Class Counsel to discuss the status of the case approximately once every two weeks, preparing and appearing for deposition, and poring over the details of the settlement agreement. Further, Class Counsel met with Plaintiff in person on several occasions pre-filing, to update her on the case, and to prepare her for deposition. (Yoon Decl. ¶ 18.)

Plaintiff has been the name and face for this litigation from the outset. Thousands of people know she started this case by virtue of the class notice, and the fact a quick internet search for Herrera v. Federal Express yields several search results. Plaintiff put her name on a public record at the risk of possible future adverse employment consequences by future or potential employers who might choose to not hire her because she took the lead in this lawsuit. This was a significant risk that she has borne for the class who will reap the benefits of this case without having to face this risk personally themselves. *See Roberts*, 979 F. Supp. at 201. In fact, although Plaintiff was ultimately able to find another job,

she was unemployed for quite some time and experienced a great deal of financial hardship during this action as a result. This should be considered in the award of the Enhancement Payment.

In addition, Plaintiff ran the risk of not prevailing in this matter and thereby facing a cost bill. This is a real risk that Plaintiff assumed at her own expense alone for the benefit of the Class – a risk that the other members of the Class did not have to face in order to get the benefits of this Settlement. This risk is substantial, and not related to her work as a plaintiff. In fact, while there is a reason to take this risk for oneself, it is a different and greater risk when taken for thousands of others. Most people are not interested in this risk.

Finally, as part of the Settlement, Plaintiff was required to provide Defendant with a broader release, something that the class members did not have to surrender in order to receive the benefits under this Settlement.

The amount of $20,000 to Plaintiff as the class representative is extremely reasonable given the risks that she took on and bore for the class and the benefits he conveyed on them.  In doing so, she has successfully brought and maintained claims that may have never been brought. Plaintiff should be compensated accordingly for her individualized efforts. Any incentive award will be left entirely to the determination of the Court at the time of final approval of the Settlement. Based on the foregoing, Plaintiff requests that the Court preliminarily approve the Enhancement Payment.

## VII.   CLASS CERTIFICATION

Wage-and-hour cases such as the above-captioned matter "routinely proceed as class actions." *Prince v. CLS Transp., Inc.,* 118 Cal. App. 4th 1320, 1328 (2004). Obviously, many such cases settle. Here, there has not yet been certification of a class; that is, the Settlement was negotiated prior to the Court ruling on the fully briefed motion for class certification. However, "[a] trial court unquestionably ha[s] the authority to conditionally certify a class for settlement

purposes." *Hernandez v. Vitamin Shoppe Indus. Inc.,* 174 Cal. App. 4th 1441, 1457 (2009).

Pursuant to the Settlement, the Parties have agreed to seek conditional certification of a Class defined as "[A]ll Defendant's current and former non-exempt delivery drivers who worked in California at any time from September 12, 2013 to the present," for the Class Period from September 12, 2013 to the Preliminary Approval Date. (Settlement ¶¶ 2.3; 2.6.) This issue has also been fully briefed in Plaintiff's motion for class certification. (DE 69.)

### A.    The Class is Sufficiently Numerous

Class certification is proper when the parties are numerous and it is impractical to bring them all before the court. *See Int'l Molders' & Allied Workers' Local 164 v. Nelson,* 102 F.R.D. 457, 461 (N.D. Cal. 1983) (explaining that a class size exceeding forty would satisfy the numerosity requirement); *Rose v. City of Hayward,* 126 Cal. App. 3d 926, 934 (1981) (holding that forty-two members is sufficient for numerosity purposes); *Perez-Funez v. District Dir. Immigration and Naturalization Serv.,* 611 F.Supp. 990, 995 (C.D. Cal. 1984) (explaining that a class size of twenty-five members is sufficient for numerosity purposes). Under California law, no minimum number of plaintiffs is required as a matter of law for maintenance of a state court class action. *Rose v. City of Hayward,* 126 Cal.App.3d 916, 934 (1981) (equitable considerations prevail over mere numbers. The size of the claim involved and any public interest factors in the case are determinative); *cf Steward v. Abraham,* 275 F.3d 220, 226-227 (3rd Cir. 2001) (Under federal case law, the numerosity requirement is generally met if the potential number of plaintiffs exceeds 40.) The California Supreme Court has upheld a class representing ten beneficiaries of a trust alleging improper conduct by trustees. *Hebbard v. Colgrove,* 28 Cal.App.3d 1017, 1030 (1972). Further, Courts have upheld a class action filed by nine named plaintiffs on behalf of 35 others. See Collins v. Rocha, 7 Cal.3d 232 (1972).

Based upon Defendant's representation the putative Class consists of approximately 11,113 Class Members. Thus, the proposed Class is sufficiently numerous. *Ghazaryan v. Diva Limousine, Ltd.,* 169 Cal. App. 4th 1524, 1531 n.5 (2008).

**B.     The Class is Ascertainable**

"Ascertainability is achieved by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible." *Sevidal v. Target Corp.,* 189 Cal. App. 4th 905, 919 (2010) (internal quotation marks and citations omitted). "Thus, class members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official or business records." *Id.*

The Class is readily identified without unreasonable expense for the following primary reasons: (1) the class definition is stated in terms that are objectively easy to understand and do not require any specific knowledge of Defendant's business, (2) Defendant maintains records showing dates of employment for its non-exempt employees. The Class is therefore ascertainable. *See Sevidal,* 189 Cal. App. 4th at 919 (proposed class definition must provide "an objective means of identifying those persons who will be bound by the results of the litigation").

**C.     There Exists a Community of Interests Amongst Class Members**

The community interest requirement has three essential elements: (1) predominant questions of law and fact, (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. *Linder v. Thrifty Oil Co.,* 23 Cal. 4th 429, 435 (2000). For settlement purposes only, Defendant has stipulated and agreed that the requisites for establishing class certification are met.

**1.     Common Questions of Law and Fact Predominate**

For common questions of law or fact to predominate, "the issues which may

be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the action advantageous to the judicial process and to the litigants." *Washington Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 913-14 (2001); see also *Medrazo v. Honda of N. Hollywood,* 166 Cal. App. 4th 89, 99-100 (2008) ("Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.] Individual issues do not render class certification inappropriate so long as such issues may effectively be managed."). "The existence of even one significant issue common to the class" has been found sufficient to warrant certification. *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.,* 249 F.R.D. 334,346 (N.D. Cal. 2008).

This action concerns Defendant's statewide policies and practices which affected all Class Members equally. *See Stephens v. Montgomery Ward,* 193 Cal. App. 3d 411,421 (1987) (finding that company-wide policies and practices which affected all within the proposed class satisfied the commonality requirement). Plaintiff contends Defendant, as a policy and practice, maintained policies that did not comply with California law on payment of wages. Thus, Plaintiff contends the only question that needs to be resolved is whether or not Defendant's policies and/or practices complied with California law. For example, as a matter of common policy and practice that applied to all employees, it is undisputed that Defendant foreclosed the opportunity for putative class members to clock out for rest breaks. Plaintiff asserts no individualized issues arise when this practice applied across the board. Where putative class members may be messaged during their breaks, the common questions as to whether this amounted to pressure to skip rest breaks, or created on-duty rest breaks, presents a "significant aspect of the case" that can be resolved for all class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The only significant "non-common" issues will be the specific dollar amounts of recovery to which each class member is entitled, which is insufficient to bar class certification because individual assessment of damages is commonly required in all class action cases. *Bell v. Farmers Ins. Exchange,* 115 Cal.App.4th 715, 743 (2004) ("[T]he necessity for an individual determination of damages does not weigh against class certification. The community of interest requirement recognizes that ultimately each class member will be required in some manner to establish his individual damages[;]. . . a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages.") (internal citations omitted). This issue would not pose a barrier to class certification. Moreover, this is a settlement and manageability is not an element.

### 2.     The Claims of the Named Plaintiff are Typical of the Claims of the Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Seastrom v. Neways, Inc.*, 149 Cal. App. 4th 1496, 1502 (2007) (internal quotation marks and citations omitted). The element of typicality only requires that the named plaintiff of a class action possess claims similar to those of the putative Class Members – not identical. *Richmond v. Dart Indus., Inc.*, 29 Cal.3d 462, 474-75 (1981); *Classen v. Weller*, 145 Cal.App.3d 27, 46-47 (1983).

The requirement is satisfied here, where the claims alleged by Plaintiff arise from the same course of conduct that gave rise to the claims of other Class Members. Specifically, Plaintiff asserts she personally was not relieved of duty for rest breaks and meal periods and was not reimbursed for the use of her personal mobile telephone, because she – like everyone else – was subject to the same policies and procedures as every other class member. Plaintiff's claims are typical

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

of the Class as a whole because they arise from the same factual basis and are based on the same legal theories that apply to the Class.

### 3. Class Counsel and the Class Representative are Adequate

"It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." *Richmond v. Dart Indus., Inc.,* 29 Cal. 3d 462, 470 (1981). "But only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Id.*

Here, Plaintiff is an adequate class representative. Plaintiff has no conflict of interest with any class member, as she has been damaged by the same alleged conduct as the Class Members and has the incentive to fairly represent all Class Members to achieve the maximum possible recovery. Plaintiff is committed to pursuing the claims of the Class Members, and her motivation in retaining counsel and pursuing this action has solely been to collect the amount owed for herself and her fellow Class Members. Plaintiff is fully informed of her duties as a class representative and is further aware that she surrendered any right to compromise the group action for her own individual gain. Plaintiff has taken the time to be an active participant in this action, including sitting for her deposition.

Furthermore, Plaintiff is represented by counsel who have extensive experience in complex wage-and-hour litigation and have protected the interests of the Class Members. The qualifications of class counsel are set forth in the accompanying declaration filed herewith and in the declarations filed in support of class certification. Those qualifications should assure the Court that the interests of the unnamed Class Members will be adequately and vigorously represented. (Yoon Decl. ¶¶ 24-25; Cleaver Decl. ISO Class Cert. (DE 69-2) ¶ 4; Yasuda Decl. ISO Class Cert. (DE 70) (¶ 4).)

Under the circumstances, this Court can be assured that proposed class counsel will adequately discharge its responsibilities to the class. Accordingly,

Plaintiff and Plaintiff's counsel are adequate and will continue to fairly and adequately represent the Class.

### D.   The Class Action Method is the Superior Means of Adjudication

Class actions are the superior method of adjudication when they unify claims that would otherwise require adjudication of numerous separate actions arising out of the same basic facts. See *Jaimez v. Daiohs USA, Inc.,* 181 Cal. App. 4th 1286, 1308 (2010) ("[i]n light of the numerous common issues of fact and law that predominate in this lawsuit, we conclude that proceeding by way of class action is the superior method of adjudication"); *Sav-On Drug Stores, Inc. v. Superior Court,* 34 Cal. 4th 319, 326 (2004) ("As alleged, each class member's claim to unpaid overtime depends on whether he or she worked for defendant during the relevant period in a position that was misclassified .... "). Further, there is recognition by the courts that class actions are encouraged where "absent effective enforcement, the employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying overtime." *Gentry v. Superior Court,* 42 Cal. 4th 443, 462 (2007).

Here, the numerous common issues of law and fact that predominate in this case make class treatment the superior method of adjudication. Plaintiff's claims are based on the same alleged system-wide policies, procedures, and practices that apply to all Class Members. This class action will serve to deter unlawful employment practices on the part of Defendant. The wage-and-hour claims of the class members are difficult to prosecute as individual employees because (1) many of the individual claims are likely to be relatively low-value and may need to be litigated in small claims court, and (2) these employees are likely to be unaware of the nuances of meal period and rest break law, such as the right to be free from pressure to skip breaks.

For all these reasons, a class action is the superior means of resolving Plaintiff's and Class Members' claims and this action should be certified

accordingly.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting preliminary approval of this class action settlement.

DATED: May 20, 2019                **YOON LAW, APC**


                                    By: _____ */s/ Stephanie E. Yasuda* _____
                                            Stephanie E. Yasuda
                                    Attorneys for Plaintiff Maria Herrera

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT