KENNETH H. YOON (State Bar No. 198443)
kyoon@yoonlaw.com
STEPHANIE E. YASUDA (State Bar No. 265480)
syasuda@yoonlaw.com
BRIAN G. LEE (State Bar No. 300990)
blee@yoonlaw.com
**YOON LAW, APC**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone: (213) 612-0988
Facsimile: (213) 947-1211

G. SAMUEL CLEAVER (SBN 245717)
sam@gscleaverlaw.com
**LAW OFFICES OF G. SAMUEL CLEAVER**
5670 Wilshire Boulevard, 18th Floor
Los Angeles, California 90036
Telephone: (323) 648-6676

Attorneys for Plaintiff Maria Herrera

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HERRERA, as an individual and on behalf of all others similarly situated, and as an aggrieved employee on behalf of herself and other aggrieved employees,<br><br>        Plaintiff,<br><br>   v.<br><br>FEDERAL EXPRESS CORPORATION, a corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 5:17-cv-02137-MWF-SHK<br><br>[Hon. Michael W. Fitzgerald, Courtroom 5A]<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS**<br><br>[Filed concurrently with Declaration of Kenneth H. Yoon; Declaration of G. Samuel Cleaver; Declaration of Maria Herrera]<br><br>Date:    December 9, 2019<br>Time:    10:00 a.m.<br>Place:   Courtroom 5A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 9, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5A of the Central District of California, located at the United States Courthouse, 350 W 1st Street, 8th Floor, Los Angeles, California 90012, Plaintiff Maria Herrera ("Plaintiff") will, and herby does, move this Court for an order granting final approval of the following:

1. Class counsel's application for attorneys' fees in the amount of $1,666,666.67 (thirty-three and one-third percent of the Gross Settlement Amount);

2. Reimbursement of actual litigation costs in the amount of $56,585.96;

3. Enhancement Payment to Plaintiff in the amount of $20,000.00; and

4. Settlement Administration Costs in the amount of $45,750.00.

This Motion shall be based upon this Notice of Motion and Memorandum of Points and Authorities; the declarations of Kenneth H. Yoon and G. Samuel Cleaver; the declaration of Plaintiff Maria Herrera; all pleadings on file in this matter; and the Court's own records, files, notes, and other documents on file in this matter, as well as upon all oral and/or documentary evidence as may be properly presented at the time of the hearing of this matter.


DATED:  June 16, 2017          **YOON LAW, APC**
                               **LAW OFFICES OF G. SAMUEL CLEAVER**


                               By:   */s/ Kenneth H. Yoon*
                               Kenneth H. Yoon
                               Stephanie E. Yasuda
                               Brian G. Lee
                               *Class Counsel and Attorneys for Plaintiff Maria Herrera*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE
      REASONABLE AND APPROPRIATE ...................................... 2

      A.   The Percentage of the Fund Approach is Appropriate...................... 2

      B.   The Award is Supported by the Results Achieved and the Risk;
           the Skill Required; the Contingent Nature of the Fee; Awards in
           Similar Cases; and Class Counsel's Lodestar Hours ........................ 4

           1.   The Results Achieved and Risk in Litigation .......................... 4

           2.   The Skill Required and the Quality of Work ........................... 5

           3.   The Contingent Nature of the Fee and Financial Burden ........ 6

           4.   Award in Similar Cases ...................................................... 7

      C.   The Reasonableness of the Requested Fee Award is Confirmed by
           Class Counsel's Lodestar .................................................... 7

III.  THE COURT SHOULD APPROVE THE REQUEST FOR
      REIMBURSEMENT OF COSTS .......................................... 9

IV.   THE REQUESTED ENHANCEMENT IS REASONABLE AND
      SHOULD BE GRANTED FINAL APPROVED.......................... 9

V.    SETTLEMENT ADMINISTRATOR'S FEES AND COSTS
      SHOULD BE APPROVED................................................... 11

VI.   CONCLUSION................................................................. 12

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Behren v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla 1988) .............................................................. 8

*Blum v. Stenson*,
465 U.S. 886 (1984) .............................................................................. 2

*Boyd v. Bank of America Corp.*,
No. SACV 13–0561–DOC (JPRx), 2014, WL 6473804
(C.D. Cal. Nov. 18, 2014) ...................................................................... 5

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................... 6, 7, 9

*Covillo v. Specialtys Café*,
No. C–11–00594 DMR, 2014 WL 954516 (N.D. Cal. March 6, 2014) ............... 7

*Elliott v. Rolling Frito-Lay Sales, LP*,
No. SACV 11–01730 DOC(ANx), 2014 WL 2761316
(C.D. Cal. June 12, 2014) ...................................................................... 7

*Evans v. Jeff D.*,
475 U.S. 717 (1980) .............................................................................. 2

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .................................................................... 5

*Glass v. USB Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................. 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .............................................................................. 2

*In re General Motors Corp.*,
55 F.3d 768 (3d Cir. 1995) ..................................................................... 5

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............... 4, 6

*In re Media Vision*,
913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................... 9

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................... 3, 4

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .................................................................... 7

*Jordan v. Multnomah County*,
815 F.2d 1258 (9th Cir. 1987) ................................................................. 8

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS

# <u>TABLE OF AUTHORITIES (cont'd)</u>

*Mangold v. Cal. Public Utils. Comm'n*,
67 F.3d 1470 (9th Cir. 1995) ...................................................... 3

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ...................................................... 8

*Paul, Johnson, Alston & Hunt v. Gaulty*,
886 F.2d 268 (9th Cir. 1989) ...................................................... 3

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ...................................................... 6

*Roberts v. Texaco*,
979 F. Supp. 185 (S.D.N.Y 1997) ...................................................... 10

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................... 9

*Stuart v. Radioshack Corp.*,
No. C–07–4499 EMC., 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .................. 7

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 8, 10

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (C.D. Cal. 2010) ...................................................... 7

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ...................................................... 3

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................... 3, 7, 8

**State Cases**

*Laffitte v. Robert Half Int'l Inc*,
1 Cal.5th 480 (2016) ...................................................... 3, 7

**Federal Rules and Statutes**

Fed.R.Civ.P. 23 ...................................................... 1, 9

**State Rules and Statutes**

Cal. Lab. Code § 1194 ...................................................... 9

Cal. Lab. Code § 2802 ...................................................... 9

iii

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**<u>Other Authorities</u>**

William B. Rubenstein et al., Newberg on Class Actions (5th ed. 2016) ............ 8

---

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff and Class Representative Maria Herrera ("Plaintiff" or "Class Representative") submits this Motion seeking an award of attorneys' fees and costs, the Class Representative's Enhancement Payment, and Settlement Administration Costs in relation to the Joint Stipulation of Settlement and Release ("Settlement") reached between Plaintiff and Defendant Federal Express Corporation ("Defendant" or "FedEx").

Plaintiff is requesting attorneys' fees in the amount of $1,666,666.67, which represents a thirty-three and one-third percent of the Gross Settlement Amount of $5,000,000.00. Plaintiff is also requesting an award of litigation costs in amount of $56,585.96, which is less than the $75,000.00 requested at preliminary approval. Defendant does not oppose these requests, and there have been no objections from the Class to these amounts as of the date of this filing.

Plaintiff is also requesting an Enhancement Payment of $20,000.00 for her service as the Class Representative to compensate her for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. Since filing this lawsuit over two years ago, Ms. Herrera has been dedicated to her responsibilities as class representative. She has been in regular contact with Class Counsel, including numerous in-person meetings and telephone calls, she sat for a full day deposition, attended Defendant's full day deposition and she has been involved in all the major parts of the case, including discovery, class certification, and mediation.

The Settlement achieved as a consequence of Plaintiff bringing this lawsuit will provide the 11,159 Class Members with an immediate benefit. At this time, there are six opt-outs and no objections. (The response deadline is October 24, 2019, which is later than the deadline to file this Motion pursuant to FRCP 23(h).) A total of 11,159 Class Members were mailed the Class Notice and will share a Net Settlement

Amount of approximately $3,190,583.33. Class Members will not have to take any additional action to receive their settlement shares besides cashing their checks. Thus, there is virtually no risk that Class Members will be pressured (actual or perceived, or even misperceived) to forgo the benefits of the settlement. Anyone who does not cash their share of the Settlement can claim it from the California State Controller under the state's Unclaimed Property Law. (Settlement at ¶ 6.12.3.)

In light of the size of the class and the extremely low number of opt-outs, and the absence of objectors, the Class overwhelmingly favors the settlement. At present, this is a 1/20 of 1% opt-out rate.

Finally, Phoenix Settlement Administrators is the Settlement Administrator. At this time, the estimate of $45,750.00 remains accurate for the work required of the Settlement Administrator in the settlement, which will be detailed in a declaration of the assigned case manager – to be filed after the notice period has elapsed and in advance of the Motion for Final Approval hearing date of December 9, 2019.

## II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND APPROPRIATE

### A.   The Percentage of the Fund Approach is Appropriate

The United States Supreme Court has ruled that the parties to a class action may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *See Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738, n.30 (1980).   In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the ideal towards which the parties should strive, stating that "[a] request for attorney's fees should not result in a second major litigation.   Ideally, of course, litigants will settle the amount of a fee." The United States Supreme Court has reemphasized this policy and further stressed that the trial court "has a responsibility to encourage agreement" on fees. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the settlement, Defendant

has agreed not to object to an award of 33 1/3% of the Gross Settlement Amount for attorneys' fees, or $1,666,666.67.

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). "This rule, known as the 'common fund doctrine,' is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (quoting *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989)). The recognized advantages of the percentage method include "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016). This contrasts with the disadvantages of the lodestar method, which "burdens already overworked trial judges" and "facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award." *Lealao*, 82 Cal. App. 4th at 30.

Further, the "percentage-of-the-fund" approach incentivizes attorneys to undertake the enormous risks of time and resources necessary to vindicate the public interest, or to protect the public policies underlying the wage-and-hour laws. It accomplishes this in two primary ways. First, California law provides that attorney fee awards should be equivalent to fees paid in the legal marketplace to compensate for the result achieved and risk incurred. *See id.* at 47; *see also Paul, Johnson, Alston & Hunt v. Gaulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

has conferred a benefit"). Second, the doctrine also aligns the interest of counsel and client:

> Under the percentage method, counsel have an interest in generating as large a recovery for the class as possible, as their fee increases with the class's take. By contrast, when class counsel's fee is set by an hourly rate, the lawyers have an incentive to run up as many hours as possible in the litigation so as to ensure a hefty fee, even if the additional hours are not serving the clients' interests in any way.

5 William B. Rubenstein et al., *Newberg on Class Actions* § 15:65 (5th ed. 2016); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In a diversity action such as this, federal courts apply state law both to determine the right to fees and the method for calculating them. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit has held that it will "follow other circuits that apply state law in calculating the fee." *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). In turn, fee awards in California class actions "average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008). While the California Supreme Court recognized the Ninth Circuit's twenty-five percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases. *Id.* at 495, 503-06.

Here, Plaintiff's counsel seek one-third of the Gross Settlement Amount consistent with California authority. The courts consider the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check when determining an appropriate percentage award in a common fund case. *Id.* at 504. As discussed in further detail below, each of these factors support this requested award.

Class Counsel respectfully submit that the fee award in this case should be made on a percentage basis equal to 33 1/3% of the gross, no-reversion settlement fund.

## B. The Requested Award Is Supported by the Relevant Factors

4

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

Courts apply a five-part test in calculating a reasonable percentage fee in common fund cases, which include the following: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Omnivision*, 559 F. Supp. 2d at 1046 (noting that "use of the percentage method in common fund cases appears to be dominant" in the Ninth Circuit). Here, each of these five factors support an award of the percentage fee requested in this case.

### 1.    The Results Achieved and Risk in Litigation

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Id.*; *see also In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *27-28 (C.D. Cal. June 10, 2005). "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47.

The Settlement is an excellent result for the Class. The Settlement provides for $5,000,000.00 as the Gross Settlement Amount for a group of 11,159 people, for an average gross settlement payment of almost $448.07 each. It is a settlement structured such that none of the class need take any action to receive their share, except cash their settlement checks. Further, if people do not cash their checks each class members' funds will be forwarded to the California State Controller, where the class member can obtain their funds at a later time. (Settlement at ¶ 6.12.3.)

The benefit to the Class is readily apparent when the Gross Settlement Amount is compared to the value of the damages Plaintiff would likely recover if successful, appropriately discounted for the risk of not prevailing. *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *see also Girsh v. Jepson*,

521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979). In the Motion for Preliminary Approval, Plaintiff estimated that the high-end exposure for the actual loss by the class is $36,500,000. Thus, the Gross Settlement Amount represents about 13.7 percent of the maximum estimated exposure.

Plaintiff submits this is an outstanding result for the Class that avoids the risks inherent in class certification, trial, and potential appeals. Additionally, Plaintiff believes the result is especially favorable in light of the fact that the claims alleged are largely dependent upon the uncommon theory that Defendant encouraged employees to forgo breaks – a standard articulated in *Brinker Restaurant Corporation v. Superior Court*, 53 Cal. 4th 1004 (2012). Considering the dearth of case law on the theories articulated, Plaintiff understands a Trier of Fact could easily determine for or against her. Missed rest break claims are also inherently difficult to establish even in the most favorable circumstances because employees do not clock in and out when taking them. Here, the challenges were compounded by the size of the class, the variety of the locations Class Members worked throughout California, and the fact Class Members typically worked on their own, away from management. Nevertheless, through interviews with Class Members, depositions, and well-calculated written discovery, Class Counsel were able to gain a strong understanding of Defendant's policies and route planning processes to articulate common theories of liability and devise common methods of proof. Despite the uncertainty of recovery, the Settlement provides significant monetary value to the Class.

As of the date of this motion's filing, only six class members out of a total of 11,159 individuals have opted-out of the settlement. The extraordinarily low number of opt-outs (a 0.05% opt-out percentage) is objective evidence the class approves of the Settlement and believes the result to be excellent. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.

6

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

With respect to the opinion of the class as a whole, it is vital to put the low opt-out percentage for such a large class in perspective. To illustrate, Plaintiff submits that the present opt-out rate of 6/11,159 is far more illustrative of a class's opinion than a 0/200 opt-out rate. The fact that 11,153 people have presently not opted-out (or objected, or complained) holds significant meaning.

Finally, the benefit provided to the Class extends beyond the issuance of settlement checks. While FedEx has argued to the contrary, Defendant did not previously maintain any written cell phone reimbursement policy prior to the initiation of this lawsuit. As of June 2018, FedEx instituted a written cell phone reimbursement policy establishing a reimbursement rate of at least $1.50 per day for the use of personal cell phones for business-related purposes. The implementation of a cell phone reimbursement policy provides lasting additional value to the 6,368 current employees within the Class (and to all future employees to be hired) by setting an objective visible reimbursement value on work-related cell phone usage. The courts recognize the value of lawsuit-driven policy changes, and have found them sufficient to justify an award of attorneys' fees even in the *absence* of monetary recovery. *Westside Community for Independent Living, Inc. v. Obledo*, 33 Cal. 3d 348 (1983); *American Constitutional Party* v. *Munro*, 650 F. 2d 184, 187–188 (9th Cir. 1981); *Sullivan* v. *Com. of Pa. Dept. of Labor, etc.*, 663 F. 2d 443, 447–450 (3d Cir. 1981); *Robinson* v. *Kimbrough*, 652 F.2d 458, 465–466 (5th Cir. 1981).

Accordingly, considering the totality of the benefits conferred to the Class, this factor favors the requested fee award.

## 2.     The Skill Required and the Quality of Work

Practice in the narrow area of wage-and-hour class action litigation requires skill, knowledge and experience in two distinct subsets of the law, and expertise in one does not necessarily translate into expertise in the other. Class Counsel must have expertise in both wage-and-hour law and class action procedure. In successfully navigating the procedural and substantive hurdles presented by wage-and-hour class

7

1    action litigation, Class Counsel displayed the necessary dual skill set. Class Counsel
2    has a proven track record in the area of wage-and-hour class action litigation,
3    successfully securing numerous noteworthy recoveries on behalf of class members.

4        As this Court knows, Plaintiff prosecuted this action towards class
5    certification, and class certification motion was fully briefed before a settlement was
6    reached. Preparing and filing the motion required obtaining approximately twenty
7    declarations from across the state. Even though Class Counsel received hundreds of
8    phone calls from Class Members regarding their meal period and rest breaks, many of
9    the callers were either current employees or former employees who were receiving
10   pension payments from Defendant. Almost all of them wanted to share their
11   experiences and confirm the viability of the claims, but were very reluctant to provide
12   sworn statements because of their (unfounded or not) fear of retaliation.  As a result,
13   Class Counsel had to interview many more witnesses than usual to obtain
14   declarations to submit with their class certification motion. Class Counsel also took
15   17 depositions, including multiple depositions at Defendant's Memphis, Tennessee
16   headquarters. Defendant provided its own competing declarations from declarants
17   throughout the state, of which Plaintiff took as many depositions as possible. The
18   pre-certification litigation process also required substantial motion practice, as
19   reflected in the lengthy Court record.

20       That said, as hopefully suggested within the time entries of maintained for this
21   case, much work was performed to *avoid* Court involvement including using informal
22   discovery conferences with the Magistrate Judge and multiple follow-ups with
23   Defendant to avoid formal motion practice. Often (in Plaintiff's counsel's opinion)
24   the time expended and work done to avoid asking the Court for its assistance is more
25   than would have been incurred simply by going direct to the Court. However,
26   Plaintiff's counsel believe it is their duty to minimize Court involvement as long as it
27   can be done without unduly prejudicing the client, as the Court is a resource that is
28   paid by the public – directly as budget items, and indirectly, as any Court

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS

involvement in this case means less time for the Court to spend on other litigant's cases.

Additionally, Class Counsel has a specific skill particularly relevant to working with experts and identifying key theories. As discussed above, this was not a case where the theories or liability and common proof were well-established or readily obvious. Thus, there was heightened risk to plaintiff side counsel who work on contingency fee, as Class Counsel did here, that counsel might spend hundreds of hours on the case without receiving any compensation or reimbursement for expenses at all. Multiple law firms declined to take Plaintiff's case before she retained Class Counsel. (Herrera Decl. ¶4.)

Class Counsel's experience in computer science and mathematics, when coupled with their expertise in wage and hour law, was integral to identifying and understanding Defendant's scheduling practices, formulating unique and novel theories, and selecting and working with retained experts. Utilizing their unique mathematics education and the knowledge gained from years of litigating wage and hour class action matters, Class Counsel identified issues with FedEx's complex scheduling algorithm, and conducted extensive discovery of FedEx's use of artificial intelligence to set Class Members' delivery routes, goals, and evaluation methodologies. Class Counsel also moved to compel records of the stops and/or intervals between stops made by driver employees, which were crucial for cross-referencing with time data to prove work performed by Class Members during breaks. With the theories in mind, Class Counsel was able to effectively depose FedEx's designated representatives. Using the discovery, Class Counsel reverse engineered FedEx's route planning system, and combined with telephone interviews of numerous Class Members, were able to identify and articulate unique and novel common theories of liability and proof that helped drive the settlement reached here.

In all, Class Counsel expended substantial time and effort to prepare the case to class certification. Throughout the litigation, unfounded or not, Class Members

9

often expressed fear of retaliation and were unwilling to be identified as witnesses or provide a declaration despite the fact they were willing to provide information supportive of the alleged claims. As a result, Class Counsel was required to expend substantial efforts to communicate with a large portion of the class to gather evidence in support of Plaintiff's class certification motion (separate and aside from communicating with a large portion of the class simply to fulfill a sense of duty to communicate with everyone who desires to speak with class counsel). The skill of counsel and quality of the work ultimately led to a settlement. Defendant is well capitalized and represented by tenacious in-house counsel who have experience litigating matters to judgment with no inherent disinclination to try a class action (nor an inclination to unnecessarily push to trial a class action). That said, it is only natural that as part of a defendant's settlement decision-making process, the commitment of any particular plaintiff's counsel to a class action is an important factor. Plaintiff's counsel submit they demonstrated such commitment here.

### 3. The Contingent Nature of the Fee and Financial Burden

Class counsel spent over two years and a combined 2,093.5 hours litigating this case on a purely contingency basis. (Yoon Decl. ¶ 13, Exh. A; Cleaver Decl., ¶12, Exh. A.) "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *21; *see also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Class Counsel is comprised of two small firms, with a total of four attorneys. Firms of this size face even greater risks in litigating large class actions with no guarantee of payment. *Boyd v. Bank of America Corp.*, No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014).

Class Counsel took this case on a contingent-fee basis against FedEx, which is ranked number 47 in the 2019 Fortune 500 list of the largest corporations in the United States, and which has annual revenues of over $65 billion. (Cleaver Decl. ¶8.)

---

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

Defendant had the resources to heavily litigate the case for years and has litigated some class actions for years. In this case, Defendants did not settle early, rather, Defendants pushed this case through pre-certification discovery right to the cusp of class certification. Class certification was fully briefed by the Parties. The ultimate course of this litigation is only known in hindsight, but Plaintiff and Class Counsel did not have this benefit at the outset of the case – or for much of the litigation for that matter.[1]

Accordingly, the contingent nature of the fee and the financial burdens on Class Counsel and Plaintiffs also support the fee requested.

### 4.    Award in Similar Cases

The requested fee award has been recognized as reasonable in numerous wage and hour cases.  *See, e.g., Boyd*, 2014 WL 6473804, at *10 (awarding 33 1/3% in attorneys' fees in a wage and hour class action settlement); *Wilner v. Manpower, Inc*., No. Case No. 11-cv-02846-JST, 2015 WL 3863625 at *7 (N.D. Cal. June 20, 2015); *Lusby v. GameStop Inc*., No. C12-03783 HRL, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (awarding attorney's fees in the amount of 33 percent of the common fund and collecting cases regarding the same); *Ching v. Siemens Indus., Inc*., No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (awarding 30 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the common fund); *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33 percent of the common fund and collecting cases regarding the same); *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11–01730 DOC(ANx), 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (although the case was resolved early in litigation, the Court found that a 30 percent was a reasonable fee award

---

[1] As a further example of their commitment to the cases they take, Class Counsel recently tried a wage and hour class action, *Hamilton v. Walmart Stores, Inc., et al.*, Central District of California Case No. 5:17-cv-1415, to verdict in the Central District Case No. 5:17-cv-1415, and obtained a verdict of over $6 million for the class on Plaintiffs' missed meal period cause of action.  The parties are now litigating post-trial motions and expected appeals.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

considering counsel's willingness to accept difficult legal challenges and the risk of nonpayment); *Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *2 (E.D. Cal. Nov. 27, 2012) (awarding a fee award in the amount of 33% of the $2.5 million dollar fund); *Schiller v. David's Bridal, Inc*., No. 1:10-CV-616-AWI, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012) (awarding nearly 33% in fees out of a settlement fund of $518,245); *Stuart v. Radioshack Corp.*, No. C–07–4499 EMC., 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (award of one third the settlement amount); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-93 (C.D. Cal. 2010) (awarding attorneys' fees in the amount of 33 1/3%).

The requested fee award in this case is therefore reasonable in light of the fees that have been awarded in other similar cases as set forth above.

## C. The Reasonableness of the Requested Fee Award is Confirmed by Class Counsel's Lodestar

As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis. *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. March 6, 2014) (citing *Vizcaino*, 290 F.3d at 1050). "A lodestar cross-check [] provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee." *Laffitte*, 1 Cal.5th at 504. "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting .... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at *6 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).

Here, Class counsel's total lodestar is $1,360,857.50,[2] based on a combined 2,093.5 attorney hours, and thus the requested fees represent a mere 1.22 multiplier

---

[2]   Class Counsels' rates are based on current hourly rates. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989) ("Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.  We agree, therefore, that an appropriate adjustment for delay in payment—whether by

of class counsel's total lodestar. (Yoon Decl. ¶13, Exh. A; Cleaver Decl. ¶12, Exh. A.) Thus, the lodestar cross-check provides support for Plaintiff's request. *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). The reasonableness of the requested fee award is confirmed by the lodestar cross-check.

In common fund cases, courts frequently apply multipliers to enhance or reduce the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. *Vizcaino*, 290 F.3d at 1051. Courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051 (internal quotation marks omitted); *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 (2004) ("One of the most common fee enhancers [...] is for contingency risk."). Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051; *accord Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001). A risk multiplier also serves to bring the financial incentives for enforcing important rights "into line with incentives [attorneys] have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal.4th at 1132. "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 5 William B. Rubenstein et al., Newberg on Class Actions § 15:87 ("Indeed, it is arguable that successful class counsel should necessarily get a multiplier above 1 in most cases;" citing to lodestar cross-checks of

---

the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute"); *see also Jordan v. Multnomah County*, 815 F.2d 1258, 1262, n.7 (9th Cir. 1987) ("The use of current rates is one method of compensating for the effects of inflation, and may be required if the effects of inflation would otherwise render the fee award unreasonable").

as high as 4.7). Courts routinely enhance lodestar amounts based on multipliers that "range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (approving multiplier of 2.5); *Wilner v. Manpower, Inc.*, No. Case No. 11-cv-02846-JST, 2015 WL 3863625 at *7 (N.D. Cal. June 20, 2015) (awarding multiplier of 2.1); *Hofstetter v. Chase Home Fin., LLC*, No. 10-cv-1313-WHA, 2011 WL 5545912, at *4 (N.D. Cal. Nov. 14, 2011) (approving multiplier of 2); *Van Lith v. iHeartMedia+Entertainment, Inc.*, 2017 WL 4340337 at **16, 19 (E.D. Cal. Sep. 29, 2017) (applying "relatively modest [lodestar] multiplier of two"); *Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving multiplier of 3.5); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6).

Here, Class Counsel respectfully submits that the fee award in this case should be made on a percentage basis equal to 33 1/3% of the gross, no-reversion settlement fund, which represent an extremely modest 1.22 multiplier of the total lodestar.

## III.   THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS

Class counsel is entitled to reimbursement of reasonable expenses. Fed.R.Civ.P. 23(h); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). The authority for the court to award this is the parties' settlement agreement and Labor Code §§ 226(e), 1194 and 2802(c).

The expenses advanced by Plaintiff's counsel to prosecute this litigation totals a combined $56,585.96 inclusive of anticipated costs. (Yoon Decl. ¶14-15; Cleaver Decl. ¶13, Exh. B.) At preliminary approval, Class Counsel had requested up to $75,000; the balance remaining following an award of actual costs shall flow back into the Net Settlement Amount to be distributed amongst the class. The categories of expenses for which Plaintiff seeks reimbursement are the type of expenses routinely

14

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS

charged to hourly clients, and therefore the full amount should be reimbursed. *In re Media Vision*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996) (costs related to experts, photocopying, legal research fees, travel expenses, postage, and filing fees may be reimbursed). *See also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007)

The litigation expenses Class Counsel incurred in this action were necessary to secure a positive resolution, and each of the required costs incurred in this matter were put forward without any assurance of repayment. In light of the nature of the expenses Class Counsel was required to incur in litigating this case, Class Counsel believes the requested award of 56,585.96 in costs is reasonable.

## IV.   THE REQUESTED ENHANCEMENT IS REASONABLE AND SHOULD BE GRANTED FINAL APPROVAL

Pursuant to the terms of the Settlement, Defendant agreed not to oppose an enhancement payment to the Plaintiff of $20,000.00, which Plaintiff requests this Court approve.

The Court may award incentive or service awards to named plaintiffs to compensate them for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Boyd*, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (approving award of $15,000 to plaintiff); *Glass v. USB Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken*, 901 F. Supp. at 299 (awarding $50,000 to a lead plaintiff).

In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and

15

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

personal difficulties encountered by the class representatives; (3) the amount of time and effort spent by the class representatives; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id.* at 299.

Particularly in employment class actions, such as discrimination or wage claims, named plaintiffs should be entitled to an enhancement award as an incentive to take the risks associated with pursuing employment claims on behalf of other employees. An award is justified where the plaintiff is a "present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y 1997).

The amount sought by Plaintiff is warranted in this case. As discussed in Plaintiff's preliminary approval motion, this has been a more two-year struggle for Plaintiff, for which she has been in contact with Class Counsel and consistently been involved in the case. She has spent approximately 96 hours for the benefit of the Class. (Herrera Decl. ¶10.) She has been patient in her efforts for the Class, in taking additional efforts and duties for the Class, and for securing this victory for the Class, with her name as the person responsible (and either famous or infamous) for the benefit of all the Class Members. Her efforts and the results achieved warrant the requested award. In support of the requested Enhancement Payment, Plaintiff has submitted a declaration explaining the work and risks that she has incurred for the benefit of the Class.

Plaintiff took several risks to pursue this action. First, Plaintiff risked a judgment entered against her for attorneys' costs in the event this matter had been lost. *See Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec. 17, 2017) (finding it was not "inequitable to assess costs upon the lead or named plaintiff in a class action");

*Schiller*, 2012 WL 2117001, at *17 ("Plaintiff, as Class Representative, undertook a financial risk that, in the event of a judgment in favor of Defendant, she may have been personally responsible for any costs awarded in favor of Defendant"). Second, this action also posed a risk to reputation. Ms. Herrera put her name on this case, pursued it for years, and achieved a settlement which has a chance of making the legal news. Already, a Google search of "Herrera v. FedEx" yields this lawsuit as its first several hits. Third, Ms. Herrera has undertaken enormous hardships, including settling for lower paying jobs, losing her home to foreclosure, and spending a significant portion of her and her husband's savings and retirement funds. (Herrera Decl. ¶13.) Ms. Herrera put this time into the case when she desperately needed to find work. Each hour she spent on the case was an hour she could not spend looking for work or working to make money to help her family. This was a substantial cost to Ms. Herrera and her family which she bore for the benefit of class members who relied on her dedication to achieve this result.

Oftentimes, the lack of effort by a class representative is harmful to a case. That was far from the case here. Defendant was well aware of Ms. Herrera's dedication to this case – as mentioned above, she also attended Defendant's deposition and provided her personal knowledge to assist with the taking of that deposition.

Ms. Herrera was the only representative in this case. She doggedly pursued legal representation even in the face of multiple rejections from law firms. Ultimately, her efforts benefitted over 11,000 Class Members and resulted in a change in Defendant's policy to the benefit of thousands of her former co-workers. Following the settlement of this case, many Class Members contacted Ms. Herrera to thank her for her efforts on behalf of the class and for undergoing the risks and burdens that they were unwilling or unable to take to vindicate their legal rights.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION COSTS

In addition to the risks Ms. Herrera has borne for the Class, she has also relinquished greater rights than the average Class Member by providing a full and general release of any and all claims.

No Class Member has objected to the requested enhancement nor has any class member made any negative comment in response to the requested enhancement. (Yoon Decl. ¶6.)

Based on the foregoing, Plaintiff requests that the Court give final approval to the requested enhancement award as fair and reasonable.

## V.   SETTLEMENT ADMINISTRATOR'S FEES AND COSTS SHOULD BE APPROVED

Phoenix Settlement Administrators is the Settlement Administrator.   They estimated $45,750.00 for administration costs, which remains accurate today. In advance of the final fairness hearing, Plaintiff will submit a detailed declaration from Phoenix outlining their compliance with the settlement terms and the order granting preliminary approval.

According to the Settlement, administration costs shall be paid from the Gross Settlement Amount. The estimated costs for administration also match the amount set forth in the Class Notice.

Based on this, Plaintiff requests that the Court approve this cost as fair and reasonable.

## VI.   CONCLUSION

For all the foregoing reasons, and on the basis of the authorities cited herein, Plaintiff respectfully submit that the standards for final approval of the requested service enhancement payment to Plaintiff, Class Counsel attorneys' fees and costs, and the Settlement Administration Costs have been met, and that they are within the range of reasonableness and are fair, adequate and reasonable.

Accordingly, Plaintiff respectfully requests that the Court enter an Order:

1.     Approving Plaintiff's request for an Enhancement Payment to the pursuant to the terms of the Settlement;

2.     Approving Plaintiff's request for an award of fees and litigation costs pursuant to the terms of the Settlement;

3.     Approving the Settlement Administration Costs to be paid from the Gross Settlement Amount pursuant to the terms of the Settlement.

DATED:  October 15, 2019          **YOON LAW, APC**
**LAW OFFICES OF G. SAMUEL CLEAVER**

By:   */s/ Kenneth H. Yoon*
Kenneth H. Yoon
Stephanie E. Yasuda
Brian G. Lee
*Class Counsel and Attorneys for Plaintiff Maria Herrera*

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AWARD OF CLASS
REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND SETTLEMENT ADMINISTRATION
COSTS