KENNETH H. YOON (State Bar No. 198443)
kyoon@yoonlaw.com
STEPHANIE E. YASUDA (State Bar No. 265480)
syasuda@yoonlaw.com
BRIAN G. LEE (State Bar No. 300990)
blee@yoonlaw.com
**YOON LAW, APC**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone: (213) 612-0988
Facsimile: (213) 947-1211

G. SAMUEL CLEAVER (SBN 245717)
sam@gscleaverlaw.com
**LAW OFFICES OF G. SAMUEL CLEAVER**
5670 Wilshire Boulevard, 18th Floor
Los Angeles, California 90036
Telephone: (323) 648-6676

Attorneys for Plaintiff Maria Herrera

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HERRERA, as an individual and on behalf of all others similarly situated, and as an aggrieved employee on behalf of herself and other aggrieved employees,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>FEDERAL EXPRESS CORPORATION, a corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.: 5:17-cv-02137-MWF-SHK<br><br>[Hon. Michael W. Fitzgerald, Courtroom 5A]<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　　February 24, 2020<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 5A |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 24, 2020, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 5A of the above-captioned Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff Maria Herrera ("Plaintiff") will, and hereby does, bring an unopposed motion for an order: (1) granting final approval of the class action settlement reached by the Parties in this action, (2) fully and finally approving and directing distribution to the Class of the net settlement amount pursuant to the terms of the settlement, (3) fully and finally approving the Enhancement Payment to Plaintiff in the amount of $20,000.00, (4) fully and finally approving the award of attorneys' fees in the amount of $1,666,666.67, (5) fully and finally approving an award of costs in the amount of $56,585.96, and (6) fully and finally approving the Settlement Administration Costs in the amount of $45,750.00.

This motion will be based on this notice, the supporting memorandum of points and authorities, the declarations filed concurrently herewith, all pleadings and papers currently in the Court's file and such other oral and documentary evidence as may be presented at the hearing on this motion.

DATED:  January 27, 2020  YOON LAW, APC
LAW OFFICES OF G. SAMUEL CLEAVER

By:  /s/ Kenneth H. Yoon
Kenneth H. Yoon
Stephanie E. Yasuda
G. Samuel Cleaver
*Class Counsel and Attorneys for Plaintiff Maria Herrera*

1
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................................1

II.  NOTICE TO THE CLASS ................................................................................3

III. EVALUATION OF THE SETTLEMENT ........................................................4

IV.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE ..................................................................................................8

V.   THE REQUESTED ENHANCEMENT PAYMENT IS REASONABLE .........9

VI.  SETTLEMENT ADMINISTRATOR'S COSTS SHOULD BE APPROVED 10

VII. CONCLUSION.................................................................................................10

i

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

Page

**State Cases**

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008) ..................................................................................8

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ..........................................................................................9

*Kullar v. Foot Locker Retail, Inc.*,
168 Cal. App. 4th 116 (2008) ................................................................................4

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016) ..............................................................................................8

**Federal Cases**

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ................................................................................4

*Mangold v. Cal. Public Utils. Comm'n*,
67 F.3d 1470, 1478 (9th Cir. 1995) ........................................................................8

*Patton v. Church and Dwight Co., Inc.*,
2019 WL 6357266 (C.D. Cal. Aug. 6, 2019) ..........................................................9

*Roes v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ........................................................................5, 6, 7

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043, 1047 (9th Cir. 2002) ..................................................................8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this Motion, Plaintiff Maria Herrera ("Plaintiff" or "Class Representative") seeks the Court's final approval of the Joint Stipulation of Settlement and Release ("Settlement") between Plaintiff and Defendant Federal Express Corporation ("Defendant"). The Settlement provides for $5 million as the Gross Settlement Amount with no reversion to Defendant. The Net Settlement Amount is the balance of the Gross Settlement Amount after the following are deducted subject to Court approval: (1) attorneys' fees in an amount up to $1,6666,666.67 (33 1/3% of the Gross Settlement Amount); (2) actual litigation costs advanced by Class Counsel which in this case total $56,585.96; (3) Settlement Administration Costs up to $45,750.00; (4) $20,00.000 for the Enhancement Payment to Plaintiff; and (5) the PAGA Payment of $50,000 (of which $37,500 be awarded to the State of California and $12,500 being awarded to Qualified Claimants). The Class consists of all Defendant's current and former non-exempt delivery drivers who worked in California at any time from September 12, 2013 to July 9, 2019. The Class totals 11,159 persons. The Class Period is the period from September 12, 2013 to July 9, 2019.

Pursuant to the Court's order of July 8, 2019 granting preliminary approval (DE 115), the Settlement Administrator, Phoenix Settlement Administrators, has complied with this Court's requirements for notice to the Class by mailing notice to all 11,159 Class Members contained in the class list.

Subsequently, on December 11, 2019 (DE 124), the Court granted the Parties' stipulation and Ordered that all Class Members be given mail notice of corrected estimated payment amounts and workweeks, with an additional 30 day opportunity to dispute these work weeks, opt-out, object or do nothing in response to this Settlement. The cost of this additional mailing was borne completely by the Settlement Administrator.

The results of the original notice process are as follows:

1. Nine (9) exclusion requests;
2. Zero (0) objections;
3. Thirty-Three (33) undelivered notices.

The results of the supplemental mailing are as follows:

1. Zero (0) additional exclusion requests;
2. Zero (0) objections;
3. Twenty-Five (25) undelivered supplemental notices;
4. Only seventeen persons (17) have both an undeliverable Notice Packet and undeliverable Corrective Postcard.

Thus, after the supplemental mailing, no Class Members changed their mind. Because of the two mailings, the percentage of people who received notice of one or the other, based on the mailing results is 11,142 (11,159 persons - 17 who did not receive either written notice), or 99.8%. (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶¶ 3-11.)

Everyone who did not opt out will receive a share, which based on these figures, means virtually every Class Member (99.9%, 11,150/11,159) will be sent a settlement payment.

Plaintiff and Class Counsel respectfully request that the Court grant final approval of the Settlement, including payments from the gross settlement amount for the Class Representative's Enhancement Payment of $20,000.00, attorneys' fees in the amount of $1,6666,666.67, costs in the amount of $56,585.96, and settlement administration costs to Phoenix Settlement Administrators. in the amount of $45,750.00, which is consistent with the amount disclosed in the class notice. (Kruckenberg Decl. Ex. A, p. 3.)

## II. NOTICE TO THE CLASS

Pursuant to the Court's Procedural Order granting preliminary approval of the class action settlement (DE 115), the Settlement Administrator gave notice via USPS First-Class Mail to the 11,159 Class Members contained in the class list on September 9, 2019. (Kruckenberg Decl. ¶ 4.) As part of the preparation for mailing, the Settlement Administrator processed all 11,159 names and addresses contained in the Class List against the National Change of Address ("NCOA") database maintained by the United States Postal Service, for purposes of updating and confirming the mailing addresses. (Kruckenberg Decl. ¶ 4.)

132 Notice Packets were returned to the Settlement Administrator as undeliverable, two bearing a forwarding address. The Settlement Administrator performed a computerized skip trace on the 130 returned Notice Packets without forwarding addresses in an effort to obtain an updated address for purposes of re-mailing the Notice Packet. As a result of this skip trace, the Settlement Administrator obtained 108 updated addresses and promptly re-mailed the Notice Packet to those Class Members via U.S. First Class Mail. (Kruckenberg Decl. ¶ 7.)

Pursuant to the Court's Order on December 11, 2019 (DE 124), the Settlement Administrator gave a supplemental notice via USPS First-Class Mail to the 11,159 Class Members contained in the class list on December 23, 2019. (Kruckenberg Decl. ¶ 6.)

As of the date of this motion, there are thirty-six (36) undeliverable Corrective Postcards. To be more specific, thirty-four (34) were undeliverable since an updated address could not be obtained and two (2) were returned a second time. (Kruckenberg Decl. ¶ 10.) There were no additional requests for exclusion from this second mailing, the number of objections remains the same at zero and no additional workweek disputes. (Kruckenberg Decl. ¶¶ 12-14.)

Finally there are only a total of seventeen (17) Class Members who have both an undeliverable Notice Packet and undeliverable Corrective Postcard. (Kruckenberg Decl. ¶ 11.)

The Settlement Administrator has been and will continue to perform the required duties to ensure the best practicable notice, as set forth in the Settlement and the Court's order.

## III.  EVALUATION OF THE SETTLEMENT

To determine the preliminary fairness of an agreement, the Court balances the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The Court's Procedural Order (DE 115) addressed the *Linney* factors and concluded that the Settlement was fair, reasonable, and adequate. As set forth in Plaintiff's motion for preliminary approval (DE 113) and the declaration of the Kenneth Yoon (DE 113-1), Plaintiff has provided the Court with the "basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 133 (2008). This includes the gross settlement amount, the average net recovery to each Class Member, and an estimate of actual damages.

Since the Procedural Order, the Ninth Circuit has issued an opinion clarifying some of the requirements of class action settlements. The Ninth9th Circuit clarified the requirements for best notice practical and stated that a settlement pre-certification requires a higher level of scrutiny for evidence of collusion or other conflicts of

interest. *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

With respect to the notice, the notice provided in this case satisfies the best notice practical standard as 99.99% of the Class has received actual mail notice. The criticism of the lack of class notice in *Roes* is not warranted here: the undeliverables total 17 with an undeliverable rate here of 0.15%. By contrast, the undeliverable rate in *Roes* was "at least 12%." *Roes*, 944 F.3d at 1046. Per the latest clarification of best notice practical, notice in this case met the requirements – if not exceeded them. Frankly, this is not a surprise because the class here are drivers for Federal Express, quite different than the class of exotic dancers in *Roes*, which are a much more transient workforce.

With respect to heightened scrutiny, this case does not have the concerning factors present in *Roes*. Namely, unlike in *Roes*, although this case was similarly pre-certification, where this case is procedurally compared to *Roes* is on opposite ends of the pre-certification spectrum. In *Roes*, the case settled during the appeal from a motion to compel arbitration. *Roes*, 944 F.3d at 1040. It is not apparent if any formal discovery was performed in *Roes*, and the settlement must have occurred extremely early in the case as motions to compel arbitration are necessarily early motions, cases are usually stayed pending that decision, and the case settled while on appeal. This case settled with the Court having a fully briefed motion for class certification on the docket – the latest part of pre-certification litigation.

The differing scrutiny for pre-certification settlement discussed in *Roes* does not really apply here as in contrast to *Roes*, adversarial discovery was well-advanced and Plaintiff's class certification motion had been fully briefed before settlement. Both the motion and the opposition were supported by substantial documentary evidence and testimony through multiple depositions and declarations. Thus, here the Court has the same information as if the case were settled post-certification. The only theoretical distinction relevant between a certified class action and a fully briefed

class certification motion not yet ruled is if the court felt additional briefing necessary. Recognizing this procedural posture (DE 115, p. 7), the Court granted preliminary approval.

Additional concerns raised about the settlement in *Roes* are also absent here. In *Roes,* the Ninth Circuit focused on the following issues with the settlement: (1) a clear sailing agreement, (2) the disproportionate cash distribution to attorneys' fees, (3) large incentive payments seemingly untethered from service to the class, and (4) valuation of the settlement, including reversionary clauses that would return unclaimed funds to the defendants. *Roes,* 944 F.3d at 1049-1050.

Other than the clear sailing element, the other factors are absent. There is no issue of the value of the settlement fund in this case. The Gross Settlement Amount is $5 million in actual cash, not coupons and not injunctive relief. Here, the one third for attorneys' fees requested is not disproportionate unlike *Roes*, where the requested fee award exceeded the base cash settlement value to the class. *Id.* at 1051 (noting "more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115).")

The justification for the incentive payment for Plaintiff Herrera is fundamentally different than the justification for the payment in *Roes*. Though is the payments requested are the same amount, the nature of the release is different. The *Roes* incentive was specifically "for their execution of a general release". *Id.* at 1056. Plaintiff Herrera's incentive is "in recognition of her efforts in coming forward as a Class Representative." (Settlement at ¶2.14.) Although the Class Representative's Released Claims constituted a general release, this release was given for the benefit of the Class in order to secure the Settlement, not as consideration for the incentive payment. Further, in *Roes*, the enhancements were twice as much as here as there were two plaintiffs in Roes, and they were seeking their incentive against a much smaller monetary gross settlement ($2 vs. $5 million).

The work performed by Ms. Herrera is fundamentally different as well, as her case has been heavily litigated with her involvement, while the *Roes* matter was settled while on appeal from a motion to compel arbitration. For example, it is highly unlikely that either *Roes* plaintiff had her deposition taken unlike Plaintiff Herrera in this action.

Finally, the settlement here is substantially different than in *Roes* because there is no reversionary clause. This is a fully paid out settlement without any requirement for Class Members to make claims. Notably, out of a class of over 11,000 current and former employees who have received two notices concerning the settlement, there have been no objectors. This is very different than *Roes*, in which multiple class members vigorously objected to the settlement and sought to prevent it. In *Roes*, there were two other lawsuits that overlapped the *Roes* case, *Roes*, 944 F.3d at 1040, thus, increasing the need for Court scrutiny to ensure that defendants were not attempting to settle the litigation with the plaintiffs' counsel most amenable to a settlement favorable to the defendants Here, counsel are aware of no related litigation.

The clear sailing clause is present. However, in *Roes*, concern over this element was tied to the potentially disproportionate attorney fee given the parties' valuation of the non-cash elements of that case such as injunctive relief and coupons. In this case, the value of the settlement to the Class is clear. The entire payment to the class is in cash. The Court does not have to examine the value of any non-cash elements. There is no value placed on the changed practices that Plaintiff and counsel achieved for the Class (e.g. the new/revised policy on cell phone reimbursements). The percentage of the fund method here is based on the percentage of the cash settlement only. There is no coupon benefit as part of the fund. Thus, the Court can determine the attorney fee based on the evidence before it and a contested fee motion is less useful to the Court as the fee award is a straightforward analysis of

the fund, the percentage of the fund allocated to fees and costs, and a lodestar cross-check on the fees and costs with supplied billing records.

In addition to the information Plaintiff supplied in support of her motion for preliminary approval, Plaintiff notes Class Members' reaction to the Settlement has been overwhelmingly positive, as detailed in the concurrently filed declaration of the Settlement Administrator. Specifically, of a Class of 11,159 persons, there have been zero objections and nine opt-outs, for a total participation rate of 99.99%. (Kruckenberg Decl. ¶¶ 12-13.) Thus, 11,150 Qualified Claimants will share in the net amount of $3,173,497.37. Along with the other *Linney* factors previously considered by the Court, this factor also weighs in favor of final approval.

## IV. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

As detailed in Plaintiff's motion for attorneys' fees and costs filed on October 16, 2019 (DE 119), Plaintiff is requesting attorneys' fees in the amount of $1,666,666.67, which represents a thirty-three and one-third percent of the Gross Settlement Amount of $5,000,000.00. Plaintiff is also requesting an award of litigation costs in amount of $56,585.96, which is less than the $70,000 maximum estimate stated on the Notice. Notably, there have been no objections from the Class to these amounts.

In a diversity action such as this, federal courts apply state law both to determine the right to fees and the method for calculating them. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit has held that it will "follow other circuits that apply state law in calculating the fee." *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). California law, in turn, embraces the percentage method, which "calculates the fee as a percentage share of a recovered common fund or the monetary value of the plaintiffs' recovery." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 490 (2016). Under the percentage method, "fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008).

8
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Thus, Plaintiff's request for fees in the amount of one-third of the common fund is appropriate. Moreover, as detailed in Plaintiff's fee motion (DE 119), Class counsel's total lodestar is $1,360,857.50, based on 2,093.5[1] attorney hours, and thus the requested fees constitute a modest 1.22 multiplier to Counsels' lodestar. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but for the loan of those services" and the potential of default on the loan (i.e. losing the case and receiving no fee) (citation omitted)). The lodestar cross-check provides support for Plaintiff's request. *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). Here, the reasonableness of the requested fee award is confirmed by the lodestar cross-check. *See Patton v. Church and Dwight Co., Inc.*, 2019 WL 6357266 at *5 (C.D. Cal. Aug. 6, 2019) (approving attorney hourly rates between $350 and $725 and lodestar multiplier of 1.3).

Based on the foregoing and on Plaintiff's fee motion (DE 119), Plaintiff respectfully requests the Court finally approve attorneys' fees in the amount requested.

## V. THE REQUESTED ENHANCEMENT PAYMENT IS REASONABLE

As detailed in Plaintiff's motion for attorneys' fees and costs filed on October 16, 2019 (DE 119), as well as Plaintiff's declaration (DE 120), Plaintiff has made significant sacrifices to pursue this lawsuit. Most notably, Plaintiff struggled to find employment, and has never found comparable employment to her 12 years work for Defendant. She has worked nearly 100 hours for this case.

---

[1] These hours are modestly understated as there was an unexpected amount of work done since October 2019, which resulted in the second mailing.

9
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Accordingly, Plaintiff respectfully requests that the Court approve an Enhancement Payment in the amount of $20,000.00 for her work done on behalf of the Class.

## VI. SETTLEMENT ADMINISTRATOR'S COSTS SHOULD BE APPROVED

The Settlement Administrator initially estimated $22,000.00 for administration costs, which is the amount disclosed in the Class Notice. However, the final costs are *less* than the not-to-exceed amount, at $21,552.00. According to the Settlement, Settlement Administration Costs shall be paid from the Gross Settlement Amount.

The Settlement Administrator has complied with the terms of the Settlement and the Court's Procedural Order. For these reasons, Plaintiff respectfully submits the Court should approve the Settlement Administration Costs in the amount of $21,552.00.

## VII. CONCLUSION

Based on the foregoing argument and authority, Plaintiff respectfully submits that the standards for final approval of the Settlement have been met, and the terms of the Settlement are fair, adequate and reasonable.

DATED: January 27, 2020  **YOON LAW, APC**
**LAW OFFICES OF G. SAMUEL CLEAVER**

By: /s/ Kenneth H. Yoon
Kenneth H. Yoon
Stephanie E. Yasuda
G. Samuel Cleaver
*Class Counsel and Attorneys for Plaintiff Maria Herrera*